Good morning. Good morning, counsel. Dean Stewart on behalf of Tan Duc Nguyen. I had a couple of things I'd like to start with, with the court's permission. One of the things that I hope is clear from the record is that this was a very close case in the district court. It was tried twice, hung the first time. The second time it hung as to one of the two counts. And while the hours of deliberation are not apparent in the record, it was certainly a close case. That highlights the importance of the material that was gained by the government through the search warrant process. About 85% of the documentary evidence that was presented at trial came from the search of my client's office. I don't recall, I don't believe there was anything from his home, but the office was a treasure trove for the government agents in this case. Without that material, I think it's pretty clear there would have been no conviction in this case. The crux of the warrant itself was the opinion of a number of unnamed state attorney general officials. They opined in the affidavit in support of the warrant that the letter in question, the letter that was mailed to 14,000 voters, quote, could, end of quote, constitute a state crime. In addition to that, as I believe the government concedes, there are only two other facts adding to the application. The first was the fact that it was. That statement is true? I'm sorry? The statement that you just recited, that the letter could be a crime. It's true. Yes. Well, no. Actually, I don't think it is true. And that takes an analysis of the letter itself, which brings us around to the political nature of it. And perhaps a separate question from that is whether or not it's intimidating. And my position would be that, A, the letter itself is not intimidating in any way and does not constitute intimidation. And, B, even if it does, it's still political speech and is protected. What about the word emigrado, which is used and which has a couple different meanings, one of which could mean immigrant, and the letter could be interpreted as advising immigrant citizens, based on their status, that they might be subject to deportation or incarceration if they voted, which clearly is not correct. Right. And let's take that. That's the most sinister version of emigrado. The most sinister for a moment. Yes, of course. I would suggest that that is not in any way intimidating for a couple of reasons. First, if you are a naturalized citizen, and we know that the people this was sent to were born outside of the United States, so anybody that's a citizen and received this must have gone through the naturalization process. All of those folks know their civics way better than those of us who were born here and know darn good and well that they are entitled to vote, period. There's nothing in this letter that would intimidate them in any way. The second point, and I think this is a really important one, is in the application considered by the state court judge, there's discussion of the receipt of a number of complaints from individuals and organizations. At no point in the affidavit is there an indication that anyone complained about being intimidated. It's simply that there were complaints received, and somehow that gets bootstrapped into the state attorney general's office opinion that somehow this was an intimidating letter. Unfortunately, we don't know what went into the state court judge's analysis of all of this, because as the facts during the pretrial motion showed, the warrant was presented to the state court judge at 10 o'clock at night. He signed it shortly thereafter, and what he considered or was discussed or even thought about is not part of the record in any point. Let me take for the moment your argument that no United States citizen properly registered would reasonably interpret this letter as telling them you're in trouble if you go vote. Correct. What about the paragraph in the letter that says, also, you're being informed that the government of the United States is implementing a new computer system with which to verify the names of all new registered parties who vote in the coming elections of October and November, organizations who are against immigration might request information from this new computer system. That sounds as though they're saying, listen, if you register to vote, these anti-immigration organizations are going to get your name, and they may take actions that might affect you adversely. Let's assume that's exactly the way it's interpreted by somebody who receives it. The problem with that is that it's not a threat of intimidation by the writer of the letter. What it's saying is if there is some problem, well, let's say you're even a legal voter, we're telling you, we the writer, we're telling you that government action may occur here. Government action may occur that you might be arrested. Government action may be occurring. No, I'm asked to stay with the paragraph I just read you. That paragraph doesn't say anything about you're going to be arrested by the government. Right. What it says is the government may be doing a computer database. The computer database may be made available to anti-immigration organizations. You are an immigrant. The inference then being, oh, you may be adversely affected as a result of this. And, again, let's take the government part out of it. All this does is inform this person that there's some action that might take place that is not the responsibility or fault of the person that's writing and sending this letter. It's a prediction, nothing more. Yes. And there was no... And what's the possible design consequence? I mean, why is that paragraph here? Why is the paragraph there? Why is that paragraph written and then sent to these people? Yes, Your Honor. I think the trial evidence showed that there was some basis, in fact, for believing that that was actually going to occur or there was some kind of a plan about that, that there was, in fact, a computer database and the rest of that. I'd have to look it up. You're not answering my question. You're telling me that this might be true. I'm asking you, why was it sent? I can't honestly answer that. I can. It seems obvious. The whole purpose of this letter is designed to suppress voting by the people that it's being sent to. Well, I would say that not the people it's being sent to, but a subset of the people it's being sent to, which is those who are either illegal or those who are legally in the United States but not eligible to vote. Well, I'm not sure that's right. For example, it might also have the intended consequence of, well, you are already registered, so you're going to be in the database, and whatever adverse consequence you might suffer because these anti-immigration organizations find it out, but you may have some friends, you may have some relatives who are trying to figure out whether they're going to register to vote. They may not. I mean, it's perfectly obvious that the reason this letter is sent is, right or wrong, good prediction or bad prediction, it's being sent to registered Democratic Hispanic voters by a Republican who's hoping to decrease the Democratic vote. Now, the letter may or may not have that consequence, but that's certainly the obvious intent of the letter. Well, let's assume that that's true. The material that was presented to the issuing judge didn't support that that, in fact, had happened. There were a bunch of complaints. There was no showing that that actually occurred. This was just a speculative. What does the judge need to know beyond what I just stated to you? That is to say, this letter was sent. It was sent to registered Democratic voters who were Hispanic. Now, I don't think in order to sustain the warrant, we need to conclude that this was a violation of California law. I agree with that. We need to conclude that it could have been. I think it needs to be more than that. I would suggest it needs to be more than that. What? How much more? Well, to some showing that some sort of a violation had actually occurred, for example. No, no. I disagree with you. You're saying some violation had to have occurred. I don't think we need to show that. I think they need to show probable cause to believe that a violation occurred. Not that it did. And probable cause to believe that this would be a violation. Not in terms of probable cause that this happened. We know what happened. But probable cause to believe that a California law is violated by this. We don't need to conclude that it was. No, no. And I agree with that. I just don't think the presentation in this specific affidavit is sufficient to conclude that the law was violated at all. And this brings us over to the political speech side of things. Why do we need to have people who come forward and say I'm intimidated? Why can't we just look at the letter and its probable consequence? And I think that you have to do both of those things. It's more or less a two-step process. If there's no harm, no foul, and nobody is complaining about being intimidated, where's the showing that a crime could be committed, even could be committed at that point? But there was no showing that anybody was intimidated. And that's my position. Yeah, I got it. If I may, for just a moment, segue over to the political side of things. I had a difficult time getting the district court's attention on this issue. I thought and still think today it's a significant one. The district court apparently did not. If you'll see in the written decision after our suppression motion, there's an acknowledgment that I made the motion and then absolutely nothing about it. I also argued it orally, and the district court was interested in other portions of the motion than the First Amendment political speech aspect of it. But I would suggest that that's probably the critical part of my argument is that, in fact, this was in the midst of an election. It was about an issue that everybody cared about, and it was a specific pinpoint concern about a political candidate. And he had expressed that, as the record showed, to the registrar of voters. And that is the possibility that those who cannot, that are not eligible to vote, may well have an effect on the elective process. And that all was very clear, I think, in the trial record. An important witness was Ms. Castillo, who talked about she was both a resident of the 47th District and an employee of the registrar's office who said that when she received it, she said, I figured it was a four political games. And then at the first trial, I asked her about her testimony there. And there she had said she didn't like it because it was in Spanish. No one testified, again, that they were intimidated or that there was any evidence of intimidation, other than however one were to interpret the actual letter. With the courts. So it's your position that the magistrate needed someone to say they were intimidated in order to grant the warrant, issue the warrant? No, I would suggest that the magistrate needed something better than the opinion of a couple of lawyers at the State Attorney General's office. And that's really the crux of how this was issued. It was the opinion of those lawyers. With the court's permission, I'd like to. Did the judge have this letter in front of him? Yes, he did. And I assume he had a California statute book. He did, indeed. Yeah. If I may, I'll reserve my last two and a half minutes. Is it your position that if this letter constituted free speech? Yes. That then there's no violation in obstructing justice and making false statements. And therefore, there's no basis for, if it's free speech, there can't be a warrant? Under these circumstances and these facts, correct. That's my position. And it's not just free speech. It's free political speech, which I would suggest is a higher standard. Thank you. May it please the Court. Erin Flynn on behalf of the United States. Can you speak up a little? Sure, Your Honor. Your Honors, the only question before this Court is whether the district court properly denied the defendant's motion to suppress. And we'd say that the answer to that question is yes, based on two reasons. The first is that the warrants here were valid. They were supported by probable cause, and they stated with particularity the locations to be searched and the items to be seized. And second, even if this Court were to bypass the probable cause determination or to find that probable cause was lacking, which it wasn't, the evidence, nevertheless, is admissible under the good faith exception. Well, doesn't probable cause include not only probable cause to think that the documents they're searching will be there, but probable cause that there's been some violation of law? Yes. Okay. So we have to come back to the points that we were arguing about with your adversary. Right. And I think that Your Honor really honed in on the real question in this case is what was this letter conveying to the recipients? And it's important, you know, this Court has made clear repeatedly that the probable cause analysis is a totality of the circumstances analysis. It's not something that the magistrate judge is looking at evidence in isolation, but rather in context. And here What's he looking at besides the letter and the statute? So here, there are a number of things when you look at what the magistrate judge was presenting. First of all, in the two days between the time that the State launched its investigation and it went to present the magistrate judge or to apply for the search warrant, a number of things occurred. First, we know that 14,000 foreign-born registered voters in the 47th Congressional District, all of whom were Hispanic and registered Democrats or declined to state their party affiliation, were the only recipients of this letter. That information was in the affidavit that was presented to the magistrate judge. It was based on the agent's interviews with the mailing house that sent the letters. So would that matter if the letter did not violate the statute? I'll stop there. If the letter was not unlawful, would it matter that it was sent to 14,000 people? Well, I think the fact that it's sent to only this subset of voters, all of whom are presumed to be naturalized citizens because they've registered to vote. Well, that may have to do with whether the letter is unlawful. But does – suppose ultimately it turns out that the letter is perfectly lawful. That ultimately it turns out – sorry, Your Honor, I didn't hear you. That the letter is lawful, that this kind of a letter is protected by the law, or it doesn't violate the law. Well – And what does that – does that have any effect on it, or does it – if the magistrate and two people in the attorney general's office thought it was unlawful or it might be unlawful? I mean, it's like when – probable cause to believe that a crime has been committed, is that a legal question, too? Well, it's a legal question, but the magistrate judges determination so long as there's a substantial basis for his probable cause determination. Is that determination on a legal question? I mean, normally it's factual, or it's at least something factual involved. Here, if the letter and the statute can be examined and a decision made as to whether the letter is unlawful. Here – but here, there can't – that analysis, first of all, this isn't clear as to what this letter – that this letter is – well, it's not entirely clear as to – the defendant takes the position that this letter is, you know, a general mailer that essentially addressed an issue of citizen versus noncitizen voting. I think it's clear at the magistrate level, when he's looking at the affidavit and just the letter itself, that this isn't, you know, straight issue advocacy. This isn't Mr. Wynn sending a letter to constituents saying, you know, noncitizen voting versus citizen voting is important, and if you send me to Washington, I'm going to address that question. I mean, that's the pure kind of political speech that you would say is protected. Anyone who looked at that really wouldn't have thought that it was voter intimidation. But you don't have that here. What you have is this letter that's directed to this subset of individuals. As Judge Fletcher pointed out, it's not simply if you're registered to vote and you're a legal citizen, please go register and exercise your rights. You know, there's five, six paragraphs of this letter when read together state, you know, you might face consequences of being harassed by anti-immigrant organizations. There's no tangible benefit to you for voting in the United States. Well, you're arguing about why it isn't a perfectly lawful letter. Right. And I think that even if – Suppose today this Court said that letter's fine. There's nothing wrong with the letter. I think if this Court were to say there's nothing wrong with that letter and the exact same letter were to be issued, then we'd be in a different circumstance as to whether or not any magistrate judge or any agent could believe that there was probable cause to believe the letter was illegal. But that wasn't the situation. I know. So what I'm saying is if he thinks that this – that the mere writing of the letter may constitute a crime, that would be enough to justify a warrant. Yes. And it's clear that the political speech – But like facts, where you don't know whether the facts are going to constitute a crime and therefore you have probable cause to believe that you may find something about a crime, is that true with what constitutes a crime? What we know is that – and what the magistrate knew at that time was that there were two things. One, under Supreme Court precedent, that even core political speech can be restricted by the State in appropriate circumstances. And those circumstances include preserving the integrity of the State's elections and in safeguarding – I'm not arguing with whether it is or isn't. I'm just saying assume that it – that it is not a crime, that it was a question of law and it's not a crime. Does probable cause relate to a legal as opposed to a factual question? As to the – as to whether or not it's – as to whether or not this is lawful or unlawful activity, yes, it relates to – it's a question of law. But as to the information that was presented to the judge in his probable cause determination, those are only – the facts that the judge were looking at and what could influence his determination isn't a de novo question for this Court. And the California State law, under California State law as to voter intimidation, what the magistrate judge was presented with was law that stated that whether or not a voter is subject to intimidation is a factual question and that it doesn't have to be, you know, blatant attempts to intimidate voters by going to the polls, but rather that any sort of subtle manipulation or suggestion to voters that they should refrain from exercising their rights could rise to a violation of, I think, it's Section 18540, which was one of the three California Election Code violations that were in the affidavit and presented to the magistrate judge. Your opponent makes much of the fact that the complaints that were received, none of them reflected any intimidation. Well, I don't think that the – that the State agent or that the affidavit had to set forth complainant by complainant the effect of the letter on the reader. I mean, the magistrate judge had the letter in front of him. He had an email that linked the defendant to an earlier English letter that was a discussion about what should be in the letter and what it should consist of. And so given that, you know, this is a question of how a reader could interpret this and the magistrate had the letter itself, the State didn't have to wait to interview or to go investigate the 14,000 recipients and go door to door and say, you know, how did you interpret this letter and were you intimidated by it, and in the meantime allow for any potential, you know, destruction of evidence or hiding of files or deletion of emails. And so, you know, when the State is coming up with its complainants or potential evidence later on to actually bring charges, that may influence the strength of the case and whether or not they want, you know, voters who say they have been intimidated in order to – Does it make any difference that the magistrate judge was told that attorneys working for the California Attorney General thought that this letter did or might violate California law? I think that the – I think that the magistrate judge didn't have to rely, obviously it's an independent determination, he's in a neutral and detached position, it's not for him to rubber stamp the judgment of the individuals at the California Attorney General's office. I think that the – their feeling that this was a potential violation of the three election code provisions really goes more to the application of the exclusionary rule in this case than it goes to the probable cause determination. And the reason for that is if you're looking at whether suppression is warranted, you're really looking at agent culpability as well as the deterrent value in excluding the evidence. Let's assume for the purposes of this question that the warrant is invalid. Okay. I'm not asking you to concede that, but let's assume for the purpose of the question that the warrant's invalid. How does the good faith exception to the exclusionary rule operate in that case? In this case, once we assume the warrant's invalid. Right. So if – right. If we were to assume that, which we're obviously not conceding because we think there was probable cause, the Supreme Court made clear in Leon that there are really only four circumstances in which even where a warrant is invalid, suppression is warranted. And the first, you know, of those is did the agent mislead the magistrate judge? And there's no allegation here, even by the defendant, that this affidavit included false statements. You know, second, right. Next, we don't have evidence that the magistrate judge abandoned his neutral and detached role, as I was saying. There's no evidence that he was relying solely on the attorney general's office's opinion. He had the letter in front of himself to make this determination. Third, as I was stating in terms of the warrant's validity, you know, to an agent looking at this or to other agents executing the warrant, it's not so facially deficient. There's a link between the defendant and this letter that's clear. The district court stated that in his order, that the link was clear between the defendant and the letter. It states with particularity the locations to be searched. The defendant was linked to both the home address. He gave that address himself, as well as the campaign headquarters address, which the state agent supervisor had independently verified. And then it states the items to be seized and why those items are important in terms of the determination of was this lawful or unlawful activity. And finally, you know, as the district court found, and your Honor's probably most interested in, that warrant isn't so lacking in indicia of probable cause that no reasonable officer could rely on it. And here, the cases that the defendant cites are all in opposite to the facts of this case. This isn't a bare-bones affidavit. The state agent walked through in detail the two days of the investigation, the numerous sources that they talked to, how the defendant was linked to the letter in question. The letter itself was included with the affidavit, plus the e-mail that came from the defendant's own computer, which he handed to the agent at his voluntary interview. So you don't have the bare-bones affidavit. You don't have this reliance on anonymous sources without independent verification. You have a link between the defendant, the location, and the crime. And on top of it, you don't have a clear answer as to kind of what the nature of the First Amendment questions are going to be in this case. You know only that the state can outlaw or restrict even protected political speech in order to safeguard voters from intimidation, undue influence, and confusion, and to preserve the integrity of its elections. So under, you know, all four of the Leon factors, I don't think any of that. Instead of protecting the integrity of the election, you look at this the other way, and you said election integrity is being violated by a number of people who aren't qualified to vote, voting. I want to protect the integrity of the election by sending out a warning to people, you know, don't violate the integrity of the election by voting unless you're qualified to. And I think that as a student. If you look at the letter that way. And I think if you, like I stated earlier, Your Honor, if this letter were sent in a different context or the content of this letter were different, then you might be able to say, look, this is a warning. I'm merely trying to address this issue. Isn't that a little dangerous in a political campaign where one side says, and this certainly argument goes on in state after state, and it goes on in the legislature, what the danger is in elections in discouraging people from voting, which is one side of the argument. And the other side of the argument is there's a lot of illegal voting going on. Well, I, yeah, I understand both sides of the argument, Your Honor. And it's really a matter of how. I don't really understand one side, but they're both going on. But I understand both the arguments and the counter argument. And I really think it turns on how this information is presented. And, you know, here you have the context where the letter goes to only registered Democrats, it goes only to the Hispanic naturalized citizens. It's on false letterhead. Of course it goes to Democrats because the argument on one side is that there's a lot of illegal voting going on by people who vote Democratic. Or that this candidate wouldn't mind if there was illegal voting taking place by Republicans if he was going to assist him in getting more votes. Right? I mean, it cuts both ways here. It does sort of inject the legal process into a political dispute right before an election. Well, and that's why, you know, the Supreme Court has said that, you know, core political speech is at its height in protection during elections, but that the state's interest in safeguarding voters from intimidation, even at that height of protection, can sufficiently outweigh the ability to engage in political discourse. And it's for those reasons, Your Honors, unless this Court has further questions. I have a quick last question for you. Can we skip the issue of probable cause and just rule on good faith reliance? You could, Your Honor. I mean, here we do say that there's probable cause. We think it's important that, you know, that this Court were to affirm on probable cause grounds. But under this Court's precedent, you could bypass the probable cause issue and uphold only on the application of the exclusionary rule. Thank you. Thank you. Just in sum, I would say that the decision of the District Court should be affirmed. Thanks. Thank you. One last point. And I don't know if it's clear from the record. The issuance of the warrant affected the election dramatically. What's in the record is testimony and photos of the television trucks lined up outside Mr. Wynn's campaign headquarters and the State Attorney General people with raid jackets going in to effectuate the warrant. What's that have to do with probable cause? Well, I think it's important in the sense that it's the interjection of the courts and the legal process into the political process. And Judge Reinhart mentioned that, and I think it's an important point. It, at a minimum, bare minimum, should make everyone pause and hesitate a little bit more and should have made the magistrate judge in this case hesitate. And I'll submit it. Thank you. Thank you both. The case just argued will be submitted. The court will stand in recess for the day.
judges: Zouhary, Reinhardt, Fletcher